BARBARA L. PECOR, an Infant, by Her Guardian ad Litem, BURNISE PECOR, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 32554-A.)

EARL S. PECOR, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 31625.)

Court of Claims, March 2, 1955.

*Edward S. Siemer* for claimants.

*Nathaniel L. Goldstein, Attorney-General (Neil R. Farmelo* of counsel), for defendant.

LAMBIASE, J.    These claims were filed to recover damages alleged to have been sustained by claimants by reason of the alleged negligence of the State of New York, its officers and employees.

Claim No. 31625 was filed pursuant to order of this court (RYAN, J.) duly filed in the office of the clerk of this court. An appeal by the State of New York from said order was withdrawn upon the trial.

Just before noon on July 29, 1952, the infant claimant, Barbara Lee Pecor, then five years of age, fell into a so-called gear pit about twenty-five to thirty feet in depth located below the sidewalk at the northeast corner and containing apparatus used in connection with the operation of a lift bridge spanning the State-owned and operated Barge Canal which bridge carries over said canal the State highway running through the village of Hulberton, New York. The State, at all times in the claims mentioned, owned and controlled the canal, the bridge, and the sidewalks and roadway thereon, and the gear pit. The only question is whether the accident which befell the infant claimant was caused solely and proximately through the negligence of the State of New York, its officers and employees.

Access to the gear pit was had by means of trap doors which were hinged on the northerly and southerly ends thereof, and on the morning in question, the westerly set of trap doors was open and the only barrier or guard in and about said trap doors were bars placed at the top of said doors which kept them open and apart while the doors were in an upright position. Each door was of the dimension of thirty-nine inches measured in a north to south direction and measured about thirty inches in an east to west direction.

Just prior to falling into the gear pit, the infant claimant had been observed walking southerly along the easterly side of the highway pulling a cart behind her and going in the general direction of her home which was just south of the bridge. As she approached the northeasterly end of the bridge and the northerly end of the sidewalk as there constructed, she was confronted with a curb which is about thirty-three inches high at

its easternmost end, is about twenty inches high in its center portion, and is about five inches high at its westernmost end. This height of five inches is maintained by the curb as it curves to the south and extends southerly paralleling the roadway of the bridge. As the infant claimant pulling her cart came to this curb, she could mount the curb at the north end of the east sidewalk of the bridge hereinbefore described — an almost impossible feat for a child her age — or mount the five-inch curb running along the west side of said sidewalk, or go upon the bridge by way of the roadway and reach the easterly sidewalk by going through the structural steel of the bridge. She mounted the five-inch curb paralleling the roadway of the bridge, and she did so by backing up to, on and over said curb and on to the sidewalk located in the northeasterly corner of the bridge pulling the cart with her as she did so. In so doing she fell into the area exposed by the open trap doors hereinbefore mentioned and fell to the bottom of the gear pit sustaining injuries hereinafter more particularly described. She was taken from the pit and removed to a hospital.

The infant claimant's injuries consisted of: contusions of the head, arms, and shoulders, and abrasions of the same areas, and cerebral concussion. She sustained a laceration of the lower lip requiring suturing which has resulted in a scar about two-thirds inches in length extending down from the left angle of the mouth. She necessarily remained in the hospital until August 1, 1952, when she was discharged. Also, as a result of said accident she sustained an injury to her eyes. In her right eye, four eye muscles controlled by the third nerve were paralyzed, a condition, however, which was temporary and cleared up; and in her left eye there resulted a paresis of the left inferior oblique muscle demonstrated by a weakness of said muscle and an incomplete paralysis thereof. As a result of said condition in the left eye she sees double when she looks up and to the right. The paresis of the muscle in the left eye cannot be corrected by glasses and is permanent. However, the double vision can be corrected by surgery to be performed on the right eye whereby the corresponding muscle of the right eye is weakened to a degree equaling the weakness in the left eye muscle. While the double vision will be corrected by said surgery, she will continue to have to raise her head in order to see properly when she looks up and to the right. The weakened condition of the afore-mentioned muscles of both eyes will, of course, also remain permanent. This permanent condition in the eyes of

the infant claimant, in our opinion, constitutes a substantial injury. She has worn glasses since the accident and she will continue to wear them although they do not represent any substantial correction in vision. They were prescribed for farsightedness.

In our opinion, the condition existing in the sidewalk at the northeast corner of said bridge on July 29, 1952, and at the time when the infant claimant was injured was a dangerous one — because of lack of barriers and of warning of said open trap doors — foreseeable by the State of New York, its officers and employees, in the exercise of reasonable care. It was foreseeably especially dangerous to a child of the age and of the height of the infant claimant herein who was thirty-nine inches tall.

Upon this record, the State of New York was negligent in the care, maintenance and operation of said bridge and particularly in connection with its care, maintenance, and operation of said trap doors and gear pit, and said negligence was the sole proximate cause of the injuries sustained by the infant claimant and of the damages sustained by her and her father by reason thereof.

We are unable to find and we do not find any negligence on the part of the infant claimant proximately causing or contributing as a proximate cause to the accident hereinbefore described; nor can we say, upon this record, that claimant, Earl S. Pecor, the father of said infant, was negligent.

As a result of the accident and of the injuries sustained by the infant claimant, Barbara Lee Pecor, her father, claimant Earl S. Pecor, incurred expense for her necessary medical and hospital care and attention, for medicines, for transportation expense for himself and for the infant claimant in traveling from their mutual home to the offices of an eye specialist attending the infant, and for clothing worn by the infant at the time of the accident and damaged beyond repair by the accident. He also lost wages in the sum of $105 by reason of time taken off from his regular employment when necessarily accompanying his daughter to and from the office of physicians, and he will necessarily incur expense in the future in the amount of $150 for the operation described in the record and required to correct the double vision brought on by the accident. The damages sustained by claimant, Earl S. Pecor, are as follows:

| | |
|---|---:|
| Hospital | $ 35.00 |
| X-Rays | 30.00 |
| Laboratory | 2.25 |
| Dr. Cooper | 34.85 |
| Dr. Sabey | 28.00 |
| Several pair of glasses, totaling | 54.50 |
| Dr. Hyman | 25.00 |
| Buffalo General Hospital | 25.00 |
| Dental Work | 4.00 |
| Medicines and Vitamins | 48.50 |
| Transportation Charges | 46.34 |
| Clothing | 10.00 |
| Loss of employment of father | 105.00 |
| Prospective expenses for future operation on infant claimant's right eye | 150.00 |
| Total | $598.44 |

We conclude that the infant claimant herein, Barbara Lee Pecor, by her guardian ad litem, Burnise Pecor, has been damaged in the sum of $4,500 and is entitled to judgment against the State of New York in the sum of $4,500; and that claimant, Earl S. Pecor, has been damaged in the sum of $598.44 and is entitled to judgment against the State of New York in the sum of $598.44.

The foregoing constitutes our written and signed decision herein. (Civ. Prac. Act, § 440.)

Let separate judgments be entered accordingly.